UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 21-cv-02145-CMA-KAS

WELL MASTER CORPORATION,
a Colorado Corporation,

    Plaintiff,

    v.

FLOWCO PRODUCTION SOLUTIONS, LLC
a Texas Limited Liability Company,

    Defendant.

---

### DEFENDANT'S MOTION FOR SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER

---

Pursuant to Fed. R. Civ P. 16 and 37, the Court's inherent authority to enforce its Orders, and the authorities cited herein, Defendant Flowco Production Solutions, LLC ("Flowco") moves for sanctions against Plaintiff Well Master Corporation ("Well Master") and Well Master's counsel because, in violation of the Protective Order, Well Master's counsel shared the names, addresses and contact information of Flowco's top ten customers with Well Master, despite the fact that such information was designated Attorney's Eyes Only. Well Master used that information to communicate with Flowco's top ten customers to try and dissuade them from purchasing plunger products from Flowco.

1

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.L.CivR. 7.1A, counsel for the parties have conferred by letter to Well Master's counsel, by telephone conference, and by electronic mail regarding this Motion and the conduct shown herein. Well Master opposes this Motion.

## PROCEDURAL BACKGROUND

**1. The Protective Order.**

On August 9, 2021, Well Master commenced this action asserting infringement of three patents for plunger lift systems used in oil and gas wells. (Doc. # 1.) On October 8, 2021, Well Master filed an Amended Complaint. (Doc. # 20.) In its Amended Complaint, Well Master asserts claims for infringement of U.S. Patent No. 8,627,892 ("'892 Patent"); U.S Patent No. 7,395,865 ("'865 Patent"); and U.S Patent No. 7,793,728 ("'728 Patent"). (Doc. # 20 at ¶¶ 40–60.) Well Master seeks an injunction, declaratory relief, damages pursuant to 35 U.S.C. § 284, pre- and post-judgment interest and costs, and attorney's fees pursuant to 35 U.S.C. § 285. (Doc. # 20 at 12–13.)

Flowco and Well Master are competitors. (*See e.g.,* Doc. No. 96 at ¶ 9.)

On November 22, 2021, prior to the December 9, 2021 Scheduling Conference, the parties submitted a proposed Stipulated Protective Order. (Doc. # 25.) In the Stipulated Protective Order, the parties agreed and stated:

> In the course of discovery in this action, the parties may be required to produce information that constitutes, in whole or in part, protected information such as trade secrets, non-public research and development, commercial or financial information, or other information that may cause harm to the producing party. The parties anticipate production of the following categories of protected information: technical documentation (e.g., product development drawings, and vendor identification and communications), financial information (e.g. sales numbers, revenue, cost,

and profit information, ***sensitive competitive business information (e.g. customer information,*** internal emails, notes, and documents concerning strategies, pricing and competition).

(Doc. ## 25 and 41 at 1-2.) (Emphasis supplied.)

The Court entered the Stipulated Protective Order ("Protective Order") with interlineations as an Order of the Court.  (Doc. ## 40, 41.)  The Protective Order entered is a blanket Protective Order, which are essential to the functioning of civil discovery. *Gillard v. Boulder Valley Sch. Dist. Re-2,* 196 F.R.D. 382, 386 (D. Colo. 2000). Absent such Orders, discovery would come to a standstill. *Id.*

The Protective Order allowed parties to designate produced information as "Confidential" or "Attorney's Eyes Only."  (Doc. # 41 at 4 ¶ II A.) The manner of designation allowed and required the designating party to stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image."  (Doc. # 41 at 3 ¶ II D.)

Paragraph IV A of Protective Order provides in pertinent part:

A. Restricted Use:  Information that is produced or exchanged in the course of this action and designated under this Order may be used solely for the discovery, trial, and any appeal of this action, as well as related settlement negotiations and for no other purpose, without the written consent of the Designating Party.

Access to "Attorney's Eyes Only" material is governed by Section IV C of the Protective Order. (Doc. # 41 at 6-7.) Such access is extremely limited; the material may only be viewed by the Court and its personnel; counsel of record and their employees; outside experts or consultants who have signed the undertaking; independent litigation support services; and witnesses or persons agreed in writing by the Designating Party. (Doc. # 41 at 6-7.) Section IV C 3 of the Protective Order specifically excludes existing

employees or affiliates of a party from having Attorney's Eyes Only materials or information. (Doc. # 41 at 6.)

2. **Preservation Discovery.**

On September 12, 2022, the Court issued an Order which, among other things, granted Defendant's Motion to Stay Pending *Inter Partes* Review of the Asserted Claims. (Doc. # 98.) The Order stayed the case, with an exception that allowed Well Master to file a motion for certain limited discovery. (Doc. # 98 at 17.)

On September 26, 2022, Well Master filed "Plaintiff's Motion for Leave to Take Preservation Discovery." (Doc. # 100.) Essentially, Well Master sought an order seeking to compel Flowco to provide customer names, customer contact names, and addresses. Well Master did this purportedly in order to take discovery from Flowco's customers to preserve any evidence in their possession relevant to the customer's direct infringement of the asserted patents. (Doc. # 100, pp. 1-2.) In Support of its Motion for Leave, Well Master relied upon a Declaration of its President, Michael Marino. (Doc. # 96.) Mr. Marino testified that much of the evidence Well Master was seeking from Flowco's customers would be kept in temporary field offices that are regularly junked. (Doc. # 96, ¶ 11.) Mr. Marino further testified there is constant turnover of the employees. (Doc. # 96, ¶ 15.) Thus, Well Master argued it was now or never for this allegedly critical discovery because the documents and testimonial evidence in the possession of the customers would be lost during a stay. (Doc. # 100, p. 7.)

Flowco opposed Well Master's Motion for Leave, contending that Mr. Marino's testimony regarding what he described as "marketing intelligence" meant Well Master

already knew of Flowco's customers.  Flowco argued Well Master could have taken whatever discovery it thought it needed to preserve the evidence in the field offices that are allegedly junked.  (Doc. # 108.)  In its Reply, Well Master argued it did not know Flowco's customers (other than two), and did not know the quantities of sales to the customers.  (Doc. # 110 at 3.)  This would also mean Well Master did not know which of Flowco's customers would be the biggest purchasers of the accused products. Well Master represented to the Court that all of this information was necessary so that Well Master could use its limited resources to direct discovery to Flowco's largest customers as such customers would be more likely to have relevant information.  *Id.*

The Court rejected Flowco's interpretation of Mr. Marino's Declaration, finding Mr. Marino's Declaration did not state or suggest that Well Master knows the customers who have purchased and used Flowco's accused plungers or the quantities of those sales. (Doc. # 111 at 4, n. 2.) The Court granted Well Master's Motion for Leave, in part, and ordered Flowco to provide Well Master a list of its top ten customers, by volume of sales, who purchased the accused plungers, and contact information including addresses for such customers (sometimes, the "Top Ten Customer Information").  (Doc. # 111 at 4-5.) Well Master was also granted leave to take three depositions of the customers by February 28, 2023. (Doc. # 111 at 4-5.)

### 3. The Violation of The Protective Order.

On December 28, 2022, Flowco produced the names, addresses, and contact information for its top ten customers, along with the sales volumes for the plungers sold.[1] The information provided was contained in two two-page documents, each page labelled "Highly Confidential – Attorney's Eyes Only." *Id.* The information was transmitted by encrypted email that separately advised the documents were labelled Highly Confidential-Attorney's Eyes Only.

Well Master did not take any depositions of Flowco's top ten customers by February 28, 2023. In fact, no such depositions have been taken to date. Well Master did not obtain documents via third party subpoena from any of the top ten customers by February 28, 2023, or by today's date. Thus, whatever documents and testimonial evidence that may have been lost during the stay of the case was not preserved by deposition or discovery. Well Master simply did not use the Top Ten Customer Information for preservation discovery.

Instead, Flowco learned from its customers that Well Master's President, Michael Marino, had sent letters to the top ten Flowco customers.[2] As Mr. Marino has testified to this Court that Well Master did not have the names and addresses of Flowco's top ten customers, and the Top Ten Customer Information was designated as Highly Confidential-Attorney's Eyes Only, counsel for Flowco wrote to counsel for Well Master

---

[1] The production of such information is Exhibit A, which is being filed separately under seal.
[2] One example is attached at Exhibit B, which is being filed separately under seal. Flowco believes one example is enough, as the letters appear to be forms. If the Court wishes, Flowco will present all such letters.

4854-7265-5999, v. 2

to inquire how this could be happening.  Exhibit D.  Counsel for Well Master did not respond in writing, but eventually agreed to a telephone call.

In that telephone call, counsel for Well Master stated he did not give the documents themselves containing the names, addresses and contact information to Well Master.  Exhibit E.  However, he did give the information – the names, addresses and contact information disclosed in the documents designated Highly Confidential-Attorney's Eyes Only – to Well Master. *Id.* Counsel for Well Master wrongfully disclosed this information to Well Master by providing Well Master with "preservation" letters that counsel sent to each of the top ten customers.[3] These letters contained the names, addresses, and contact information of the top ten customers. *Id.* This provided the very same information that was designated Highly Confidential-Attorney's Eyes Only to Well Master in violation of the Protective Order.

Counsel for Well Master claimed this was neither an oversight nor unintentional. *Id.*  Rather, it was Flowco's fault because "Flowco did not provide fair notice that it considered the mere identity of the ten customers to be designated confidential attorney's eyes-only information." *Id.* Counsel is very mistaken, as the documents containing the information were all designated "Highly Confidential – Attorney's Eyes Only" in accordance with the designation mechanism agreed in the Protective Order.  Exhibit A.  Further, the Protective Order was designed and agreed to protect, among other things, customer information.  (Doc. # 41 at 2.)  Any claim that counsel can read to

---

[3] One example of counsel's letters is attached as Exhibit C, which is being filed separately under seal.  Flowco believes one example is enough, as the letters appear to be forms.  If the Court wishes, Flowco will present all such letters.

4854-7265-5999, v. 2

his client or otherwise transmit Attorney's Eyes Only ("AEO") information to his client and not violate the Protective Order is meritless.

## ARGUMENT

1. **There Was A Clear And Serious Violation Of The Protective Order.**

Flowco and Well Master are direct competitors. This is undisputed, as Mr. Marino so testified. (Doc. No. 96 at ¶ 9.)

Despite having what it described as "marketing intelligence", Well Master did not know the entities which had purchased and used Flowco's accused plunger or the quantities of those sales. This is undisputed, as the Court so ruled. (Doc. # 111 at 4, n. 2.)

Per the Court's Order, Flowco had to turn over the names, address and contact information of its top ten customers. Well Master's counsel was allowed three depositions of customers of its choice to prevent the alleged loss of important documents, as Well Master argued the documents would otherwise be lost because the documents are kept in temporary field offices that are regularly junked and there is constant employee turnover. Thus, the discovery had to be taken because it would be lost over the course of the stay of this case. Yet, no documents were subpoenaed, and no depositions were taken by the February 28, 2023 deadline, during the stay of the case, or still today.

Instead, Mr. Marino sent letters to the top ten customers, using the AEO designated names, addresses, and customer information. Exhibit B hereto. This is a violation of the Protective Order. And, it is a very a serious one as Well Master was not

8

using the customer information solely for the discovery, trial, and any appeal of this action, or related settlement negotiations. Rather, Well Master is using the Top Ten Customer Information to try to influence Flowco's customers to stop buying Flowco's products. The letters themselves show this. Exhibit B. Even the so-called "Preservation Letters" appear more directed at persuading Flowco's top ten customers to not purchase Flowco products that preservation of "evidence". Exhibit C.

Further, the only reason Well Master's counsel received that information in this case was based on representations that Flowco's customers would have information that would not be preserved. Well Master's representations to the Court made to obtain this discovery are in direct contradiction to any claim that Preservation Letters would have been sufficient to avoid any alleged spoliation. This raises serious questions. In particular, there is a serious question as to whether this discovery was ever intended for this case, or whether it was intended to provide a mechanism to disparage Flowco to its customers and provide Well Master with valuable competitive information it could not otherwise obtain. The fact that Well Master's allegedly critical discovery has still not occurred more than a year later reinforces these questions.

When counsel shares an AEO customer list with his clients, penalties ensue. *See, e.g., Dairy, LLC v. Milk Moovement, Inc.,* No. 2:21-cv-02233, 2022 WL 17994355, 2022 U.S. Dist. LEXIS 232984 (E.D.CA. December 28, 2022) (plaintiff's violation of stipulated protective order warranted an award of attorney fees, including attorney's fees related to determining the impact of the inadvertent disclosure of AEO customer information); *Local Access v. Peerless Network,* No. 6:17-cv-236, 2021 WL 9613924,

2021 U.S. Dist. LEXIS 3177 (M.D. Fla. Jan. 6, 2021) (recommending finding of civil contempt against party that used other side's confidential customer list obtained in litigation to communicate with competitor's customers.)

### 2. The Appropriate Sanction.

Judge Jackson's decision in *Cook v. City of Arvada,* No. 1:20-cv-002120, 2021 WL 243451, 2021 U.S. Dist. LEXIS 13019, at * 33-47 (D. Colo. January 25, 2021) contains a thorough analysis of case law regarding sanctions for violations of court's orders, including protective orders.  As discussed therein, available sanctions range from dismissal to contempt to payment of fees.  As one would suspect, the available sanctions are often determined by the details of the conduct, and the effect on the other party and, to some extent at least, the Court. In addition, there is the question whether the sanctions should fall on the party, or the parties' attorney.  Such sanctions are allowed under Fed. R. Civ. P 16,[4] Fed. R. Civ P. 37[5]; and the Court's inherent authority to enforce its Orders.[6]

At least at this stage, Flowco does not seek dismissal, or exclusion of any claims or evidence.  The full extent of Well Master's violation is neither known nor understood

---

[4] *Cook v. City of Arvada,* No. 1:20-cv-002120, 2021 WL 243451, 2021 U.S. Dist. LEXIS 13019, at * 32 (D. Colo. January 25, 2021) (imposing sanctions under Rule 16).
[5] *See, e.g., Nichols v. Denver Health & Hosp. & Auth.,* No. 19-cv-02818, 2021 WL 3287279, 2021 U.S. Dist. LEXIS 143581, at * 12 (D. Colo. 2021) (Special Master recommended finding of civil contempt under Rule 37 for disclosure of AEO information); *Digital Adver. Displays, Inc. v. Newforth Partners, LLC,* No. 12-cv-00682, 2014 WL 128010, 2014 U.S. Dist. LEXIS 3680, at *4-6 (D. Colo. January 10, 2014) (sanctioning plaintiff's counsel for violation of protective order under Rule 37).
[6] *Kaufman v. Am. Family Mut. Ins. Co.,* No. 05-cv-2311, 2008 U.S. Dist. LEXIS 32497, at * 17-18(D. Colo. April 21, 2008) (imposing sanctions for violation of protective order under Court's inherent authority and Rule 37).

10

at this time. Perhaps at some point, those may be reasonable remedies, but for now, at least, Flowco does not pursue them.

First, the return of the AEO information and material should be ordered. *See, e.g., SAS Inst., Inc. World Programing Ltd.,* No. 5:10-cv-25, 2014 WL 1760960, 2014 U.S. Dist. 61455, at * 19-20, (E.D. N.C. May 1, 2014) (sanction for disclosure of AEO customer information included retrieval from unauthorized persons of "Highly Confidential" materials provided to them and any summaries thereof).  Surely, Well Master should not gain any further competitive advantage in the marketplace as a result of the violation of the Protective Order by Well Master, Well Master's counsel, or both. To make certain this occurs, Flowco requests that this Court issue an Order that requires Well Master to identify each communication from its counsel, whether in paper or electronic form, that includes any Top Ten Customer Information; each and every document that was created with the use of such information; and that all such documents have been deleted and destroyed, including the date of such destruction. Before such deletion, a copy must be provided of each and every document to Flowco's counsel so Flowco may know which of its customers received communications and what was said to the customers. Such certification should be provided within 14 days of an Order from the Court requiring it.

Flowco should be allowed one extra deposition above the ten prescribed in the Scheduling Order. That deposition should occur with 30 days of the Court's Order requiring it.  The deposition should be a 30(b)(6) deposition of Well Master on the following topics:

1. Any communications of Top Ten Customer Information from Well Master's counsel to Well Master or any intermediary;
2. Any communication from Well Master to a top ten customer of Flowco;
3. Any drafts of such communications.

The deposition is necessary to determine the full extent of the wrongful conduct. That is necessary so Flowco can understand how it should try to address the conduct. In addition, this information is necessary so that the Court can fully address the conduct and issue the appropriate sanctions. While in many cases depositions regarding the merits and depositions regarding the violation of a protective order might be able to take place at the same time, that is not the case here. In a patent case merits-based discovery does not take place until after a claims construction decision. While claims construction briefs were recently filed, a decision from the Court cannot be anticipated to issue immediately. Discovery on the merits is likely to take place in 2024, and that is too long to wait to try and figure out what exactly happened here.

Well Master's counsel should be sanctioned in an amount equal to all of Flowco's reasonable attorneys' fees and costs concerning Flowco's investigation of the Protective Order violation described above, this Motion, and any discovery awarded as the result of this Motion. At the moment, the violation of the Protective Order was certainly made by counsel. If may be too early to say whether Well Master's conduct was as innocent bystander or knowing participant. There is certainly reason for suspicion, as Mr. Marino testified to this Court that Well Master did not know this sensitive information. It seems to Flowco that a reasonably prudent person might have reason to question the receipt of

12

such valuable information of its competitor. The additional discovery is designed to obtain information regarding this issue.

Whether the sanction should also include Civil Contempt should be reserved until after the discovery identified above takes place. *See Kaufman v. Am. Family Mut. Ins. Co.,* No. 05-cv-2311, 2008 U.S. Dist. LEXIS 32497 at *19-20. (D. Colo. April 21, 2008) (sanction of plaintiff's counsel for violation of protective order did not preclude further consideration of an order to show cause why counsel should not be held in contempt).

## CONCLUSION

For the foregoing reasons, Defendant Flowco Production Solutions, LLC requests an Order sanctioning Plaintiff Well Master Corporation and Plaintiff Well Master Corporation's counsel for the conduct described above, and granting the relief described.

Dated:  September 18, 2023

        s/Frank C. Porada
**Frank C. Porada**
FISHERBROYLES, LLP
1400 16th Street, Suite 400
Denver, Colorado 80202
Telephone: 303-808-4706
Frank.Porada@fisherbroyles.com

**Adam K. Yowell**
FISHERBROYLES, LLP
5470 Kietzke Ln.
Suite 300
Reno, NV 89511
Telephone: 775.230.7364
Adam.Yowell@fisherbroyles.com

*Attorneys for Defendant Flowco Production Solutions LLC*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2023, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which automatically will send electronic mail notification to counsel of record.

s/Frank C. Porada
Frank C. Porada
