IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02145-CMA-KAS

WELL MASTER CORPORATION,

    Plaintiff,

v.

FLOWCO PRODUCTION SOLUTIONS, LLC,

    Defendant.

## AMENDED[1] ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS

This matter is before the Court on Defendant's Partial Motion to Dismiss. (Doc. # 125.) The Motion is fully briefed. *See* (Docs. ## 154, 158.) The Court heard oral argument on October 25, 2023. *See* (Doc. # 187.) For the following reasons, the Motion is denied.

### I.     BACKGROUND

**A.    FACTS**

This patent infringement case involves "plunger lift systems" ("plungers") which both Plaintiff Well Master Corporation ("Well Master") and Defendant Flowco Production Solutions, LLC ("Flowco") manufacture and sell. Plaintiff Well Master owns three patents concerning plunger lift systems—United States Patent Numbers 7,395,865 ("the '865

---

[1] The Court amended its own order *sua sponte* to reflect the correct name of Defendant's Motion in the conclusion.

patent"); 7,793,728 ("the '728 patent"); and 8,627,892 ("the '892 patent"). (Docs. ## 20-1 to 20-3.) The Motion to Dismiss, however, concerns only the '865 patent and '728 patent.

A plunger is a cylindrical and oftentimes metallic device placed in the interior chamber or "tubing" of an oil-and-gas well. A plunger allows for the cultivation of otherwise unreachable[2] natural gas while simultaneously ejecting wastewater suspended in the well tubing. The plunger works by sliding down to the well's bottom and sealing the well, which builds pressure below the plunger. That pressure eventually lifts the plunger along with oil, wastewater, and the natural gas below. These substances get separated and collected once they reach the surface. *E.g.*, (Doc. # 137 at ¶ 14.)

Machining specific shapes into a plunger improves the device's performance and produces additional functions. Cutting fins into the plunger's base can induce rotation to better seal the well tubing. Sharpening the edges of those fins lets them double as a cleaning implement. Machining a chamber or "bore" up through the plunger's bottom, when combined with perpendicularly intersecting holes drilled through the side wells, can channel gas through the plunger to generate turbulence and improve rotation. *See generally* (Doc. # 20-1 at 4–5.)

---

[2] When a well taps into a new natural gas pocket, high gas pressure pushes the gas to the surface. Over time, the gas pressure decreases and fluids used in the extraction process collect within the tubing, which makes some remaining gas unreachable. *E.g.*, (Doc. # 20 at ¶ 29); *see also* (Doc. # 20-1 at 1).

2

**B.     PROCEDURAL HISTORY**

Well Master commenced this infringement action on August 9, 2021. (Doc. # 1.) After some pre-answer motions practice, Flowco petitioned the PTAB for *inter partes* review of all three patents-in-suit in their entirety. (Doc. # 83 at 1–2.) On September 12, 2022, the Court stayed this case pending the PTAB's decision on whether to institute review. (Doc. # 98.) On June 7, 2023, the Court lifted the stay after being notified by the parties that the PTAB declined to institute review. (Docs. ## 115, 124.) Consequently, Flowco filed its answer, counterclaims, and the partial motion to dismiss on June 30, 2023. (Docs. ## 125–126.) Well Master answered Flowco's counterclaims on August 10, 2023. (Doc. # 148.) Oral argument on the partial motion to dismiss occurred on October 25, 2023. (Doc. # 167.)

## II.   APPLICABLE LAW

**A.     RULE 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss any cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion, "the court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation omitted). A legally sufficient complaint must contain factual allegations that, "if accepted as true, [would] 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in turn, requires pleaded facts that support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's factual allegations, when examined under the Rule 12(b)(6) standard, are presumed true and construed "in the light most favorable to the plaintiff." *E.g., Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). However, not all factual allegations receive this presumption. A court will not presume as true any conclusory allegations unsupported by facts or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

"In the patent context, a Rule 12(b)(6) motion to dismiss may be a proper vehicle to determine patent eligibility under 35 U.S.C. § 101." *Securenet Sols. Grp., LLC v. Senstar Corp.*, No. 19-cv-02913, 2020 WL 2557625, at *18 (D. Colo. May 20, 2020) (citing *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016)). The Court's § 101 determination, however, "may only look to allegations in 'the sources properly considered on a motion to dismiss, such as the complaint, the patent[s], and materials subject to judicial notice.'" *E.g., Ivanti, Inc. v. Patch my PC, LLC*, No. 22-cv-00643, 2023 WL 2933406, at *4 (D. Colo. April 13, 2023) (internal citations omitted). Specific to the patent context, a plaintiff's typical presumption of truth extends to well-pleaded factual allegations of activities that are well-understood, routine, or conventional. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

**B.    PATENT ELIGIBILITY**

4

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. This language is broad by design. *See Diamond v. Chakrabarty*; 447 U.S. 303, 309 n.6 (1980); *see also Bilski v. Kappos*, 561 U.S. 593 (2010); *accord* S. Rep. No. 1979, 82d Cong., 2d Sess., 5 (1952); H.R. Rep. No. 1923, 82d Cong., 2d Sess., 6 (1952). ("Congress intended statutory subject matter to 'include anything under the sun that is made by man.'"). However, "[t]his is not to suggest that § 101 has no limits or that it embraces every discovery." *Chakrabarty*, 447 U.S. at 309. Longstanding patent jurisprudence makes clear that "'laws of nature, natural phenomena, and abstract ideas' are not patentable" to protect "'basic tools of scientific and technological work' [from] monopolization." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 70 (2012) (first quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981); then quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

The Supreme Court offers a two-step framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014) (quoting *Mayo*, 566 U.S. at 77–78). The court must determine (1) "whether the claims at issue are directed to a patent-ineligible concept, *i.e.*, a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim into a patent-eligible application." *E.g.*, *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (internal quotations

and citations omitted). The first step considers the "focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter.'" *E.g.*, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (internal quotations omitted). Once that focus is identified, a court then must determine whether that focus is directed to prohibited subject matter. *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (listing three "familiar class[es] of claims" (alteration in original)). The repeat offenders include "claims to results," "mental processes," and "methods of organizing human activity." *Id.* If a court decides that the claim is directed to a concept encompassed by one of these categories, the inquiry proceeds to step two, which asks whether the claim elements add any "inventive concept" that applies the abstract idea to which the claim is directed. *See, e.g.*, *Affinity Labs*, 838 F.3d at 1258. The added concept must be more than "well-understood, routine, conventional activity." *Mayo*, 566 U.S. at 73.

### III.     PARTY ARGUMENTS

Flowco's Partial Motion to Dismiss challenges Claims 7, 8, and 11 through 16 of the '865 patent along with Claims 11 through 15 of the '728 patent. (Doc. # 125 at 1.) In short, Flowco argues that said claims fail the *Alice* test because each claim is directed to the abstract concept of rotation, which Flowco characterizes as a law of nature, and these claims add no "inventive step" novel enough to retain eligibility. *E.g.*, *id.* at 13–20.

Flowco's conclusion rests on three assertions. First, Flowco defines the character of said claims as purely "rotation" (and, for Claim 16, "cleaning") by process of elimination—expressly disregarding any claim limitation that, in Flowco's view, was

disclosed in prior art. *See, e.g., id.* at 13–15, 17–18. Second, by presuming the claims are directed to "rotation," Flowco likens said claims to an established and disfavored category of abstract ideas, "claims to results," by identifying details missing from the claim language that Flowco insists are necessary. *Id.* at 17–18. These two interim premises, Flowco argues, mean that said claims fail step one of the *Alice* framework. *Id.* Third, Flowco cites the same prior art for the first *Alice* prong to argue that said prior art precludes the challenged claims from providing any inventive addition to the "rotation," which means that these claims fail the second step under *Alice*. *Id.* at 19–20.[3]

For its part, Well Master characterizes the character of the aforementioned claims as directed to "specific advancements over prior art methods" beyond mere rotation. (Doc. # 154 at 14–16); Doc. # 187 at 42:5–8). If the Court disagrees, Well Master alternatively argues that neither "rotation" nor "cleaning" counts as an abstract idea but, rather, both concepts are physical actions that can be viewed in the abstract. (Doc. # 154 at 15–16.) Further, supposing the Court reaches step two of the *Alice* framework, Well Master contends that Flowco failed to show the lack of an inventive concept because its position rests on an improperly truncated analysis that conflates obviousness with inventiveness. *Id.* at 27.

## IV. ANALYSIS

---

[3] Flowco reiterates these points in its reply, (Doc. # 158 at 10–14), and debates several contested but tangentially relevant points of law that the Court need not decide today. *E.g., id.* at 1–8.

As a preliminary matter, the Court opts to treat the asserted independent claims as representative of any dependent claims that stem from them.[4] Those independent claims are, from the '865 patent, Claims 7, 12, and 16 along with Claim 11 of the '728 patent.

## A.   *ALICE* STEP ONE

Assessing a claim's "character as a whole" necessitates some degree of claim construction. Consequently, courts are directed to construe the claims "to whatever extent is needed to conduct the § 101 analysis." *Aatrix Software*, 882 F.3d at 1125 (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). "[T]he § 101 inquiry must focus on the language of the Asserted Claims." *ChargePoint*, 920 F.3d at 767 (internal quotation omitted). Proper construction also requires reading the claim language "in view of the specification." *Markman v. Westview Instruments*, 52 F.3d 967, 979–980 (Fed. Cir. 1995); *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001);

---

[4] "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (internal citation omitted); *see also Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F. 4th 1231, 1241 (Fed. Cir. 2023) ("When a dependent patent claim and the independent claim it incorporates are not separately argued, then, absent some effort at distinction, the claims rise or fall together.") Plaintiff takes no position on representativeness, nor does it "present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Ivanti*, 2023 WL 2933406, at *5 (exercising discretionary authority to treat an independent claim as representative of its dependent claims); *accord* Fed. R. Civ. P. 16(c) (empowering district courts to, *inter alia*, simplify issues for the sake of facilitating the just, speedy, and inexpensive disposition of the action). Thus, the Court *sua sponte* elects to conduct representative analyses of the asserted independent claims unless stated otherwise below.

*but see ChargePoint*, 920 F.3d at 765, 767 (internal citations omitted) (warning that "reading a limitation from the [specification] into the claims" is a "cardinal sin[ ]" of patent law).

With these legal principles in mind, the Court now turns to the patents-in-suit. The Court first considers the '865 patent and, subsequently, the '728 patent. Because Flowco asserts essentially the same arguments as to Claims 7 ('865 patent), 12 ('865 patent), 11 ('728 patent), and their concomitant dependent claims, the Court elects to address Flowco's contentions via three representative analyses.

1. The '865 patent: Claims 7, 8, 12, 13, 14, & 15

The Court selects Claim 7 as representative of Claim 8 and first looks to the claim language. Claim 7 recites:

> A method of controlling fluid flow in a tubing string in a plunger lift system of an oil and gas well wherein an elongated plunger controllably travels vertically therethrough, comprising: arranging an array of fins on a lower end of said elongated plunger, wherein said fins create turbulence in gas within said tubing string; and rotating said elongated plunger about a longitudinal axis thereof, as said plunger travels through said tubing string in said plunger lift system; arranging an elongated bore in said plunger from said lower end thereof; and drilling a plurality of side holes into said bore through said plunger.

(Doc. # 20-1 at 6.) The Court also elects to treat Claim 12 as representative of Claims 13 through 15. Claim 12 recites:

> A method of controlling fluid flow in a tubing string in a plunger lift system of an oil and gas well wherein an elongated plunger controllably travels vertically therethrough, comprising: arranging an array of side holes through a side wall of said elongated plunger, wherein said side holes create turbulence in gas within said tubing string; and rotating said elongated plunger about a longitudinal axis thereof, as said plunger travels through said tubing string in said plunger lift system.

9

*Id.* Flowco asserts that "Claim 7 is highly similar to Claim 12." (Doc. # 125 at 24.) The Court agrees and notes that both claims share a specification.

The claim language refers to a plunger with fins, a bore, and a plurality of side holes extending from the bore to the side walls. Claim 7 mentions the fins that generate turbulence within the tubing string and mentions rotation without expressly stating a causal relationship between said fins and rotation. *See* (Doc. # 20-1 at 6.) Claim 12 recites the same subject matter and details, except it attributes turbulence to the side-hole-and-bore combination rather than the fins. The specification, however, explains that rotation occurs due to the fins, bore, and side walls. *See* (Doc. # 20-1 at 6); *see also* (Doc. # 187 at 26:7–10 (clarifying that the fins can cause rotation and rotation creates turbulence).) These features—fins and a bore with a plurality of side holes—provide the "means . . . that improve[ ] the relevant technology." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (internal citation omitted). Looking to the specification for an explanation of how the fins, bore, and side holes work does not equate to importing limitations from the specification. *See, e.g., Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513 (Fed. Cir. 2015). Further, both Claims 7 and 12 specify their intended results—"controlling fluid flow in a tubing string." (Doc. # 20-1 at 6.) As such, the Court finds Claims 7 and 12 directed to the generation of turbulence. (Doc. # 20-1 at 5 (expressly noting that the features claimed "help with rotation and turbulence simultaneously").)

Flowco's arguments to the contrary are unavailing. Flowco contends that Claims 7 and 12 are directed to "rotation" because prior art eliminates other elements such that

rotation is all that remains. *See, e.g.*, (Doc. # 125 at 13–15, 17–18). Although Flowco is correct that both claims implicate the force of rotation in a general sense, "all inventions at some level embody, use, reflect, rest upon, or apply" these concepts. *Mayo*, 566 U.S. at 72; *see also Ivanti*, 2023 WL 2933406, at *8 ("[T]he applications of abstract concepts 'to a new and useful end . . . remain eligible for patent protection.'") (quoting *Alice*, 573 U.S. at 217). "'[I]t is not enough to merely identify a patent-ineligible concept underlying the claim'"—the concept must be the claim's sole focus. *ChargePoint*, 920 F.3d at 766. Flowco seems to recognize that rotation is not the '865 patent's sole focus given Flowco's repeated acknowledgements that the side holes produce turbulence independent of rotation. *E.g.*, Doc. # 125 at 24 ("Turbulence from gas exiting the side holes is simply the direct consequence of having an elongated bore and side holes at all.")); (Doc. # 125 at 24 (recognizing that "[t]urbulence from the gas exiting the side holes at all . . . would necessarily occur in any plunger with both an elongated bore and side holes as some of the gas lifting the plunger escapes.")). Indeed, during oral argument, Flowco acknowledged that the asserted claims reference "desired results **from** that rotation." (Doc. # 187 at 13:2 (emphasis added).) Thus, both claims' respective focus is the same: the generation of turbulence.[5] Reducing the asserted

---

[5] Insofar as Flowco relies on United States Magistrate Judge Mix's Report and Recommendation, that reliance is misplaced. The Report found the '865 patent directed to rotation by process of elimination. *See* (Doc. # 79. at 20.) As explained by Plaintiff during the oral argument, three cancelled claims in the original '865 patent application resulted in a renumbering of the '865 patent claims such that Claim 12 was originally Claim 14). Thus, Magistrate Judge Mix mistakenly analyzed Claim 12 of the patent application as if it were Claim 12 of the issued '865 patent, whereas Claim 12 of the issued patent was actually Claim 14 in the application before renumbering. Judge Mix's other rationale in support of her recommendation was based on an inexplicable reading of Claim 12. (Doc. # 79 at 22–23 ("Claim 12 includes only a method for achieving turbulence, and the word 'turbulence' is absent from Claim 12.")); *but see* (Doc. # 20-1

11

claims to rotation would be "oversimplify[ing] key inventive concepts [and] 'downplay[ing] an invention's benefits," which binding precedent forbids. *See Am. Axle & Mfg., Inc. v. Neapco Holdings, LLC*, 309 F. Supp. 3d. 218, 224 (D. Del. 2018) (internal citation and quotations omitted). Moreover, Flowco relies on an impermissible legal analysis. Flowco points to nothing endorsing consideration of prior art to decide a claim's gravamina. Absent such a requirement, the Court's directive to holistically consider the claim controls—and discourages the adoption of such a myopic analytical framework.

From the mistaken assumption that the foci of Claims 7 and 12 are limited to rotation, Flowco next argues that the claim belongs to the "familiar" group of cases involving claims to results. (Doc. # 125 at 17–18.) More specifically, Flowco contends that both claims improperly claim a result—rotation—because the claim language fails to specify the rotation's impetus, direction, speed, and duration. *Id.* at 17–18. Although the claim language does list the act of rotating the plunger without expressly saying how rotation occurs, (Doc. # 20-1 at 6), Flowco's position is problematic for two reasons beyond the flawed initial premise.[6]

First, nothing before the Court suggests that Claims 7 or 12 offer an insufficiently detailed explanation. Although Flowco principally relies on two Federal Circuit decisions—*American Axle* and *Interval Licensing LLC*—both cases are distinguishable.

---

at 6 (emphasis added) ("A method . . . wherein an elongated plunger . . . compris[es] . . . "an array of side holes . . . wherein side holes create **turbulence** in gas within said tubing string . . . .")).
[6] Claim 7's promised result is the generation of turbulence, not rotation. Were Claim 7 limited to rotation, the claim language's mention of rotation might be more problematic, but that is simply not the case here.

In *American Axle*, the claim language at issue recited manufacturing a driveshaft to meet specific performance standards. Because those standards came from nothing more than applying Hooke's Law, a mathematical formula that captures the natural law of elasticity, the *American Axle* Court cabined its step-one holding to circumstances "where, as here, a claim on its face clearly invokes a natural law, **and nothing more**, to achieve a claimed result." *Am. Axle*, 967 F.3d at 1290,1298 (emphasis added). By comparison, Claims 7 and 12 recite gas-channeling side holes which, as the specification explains, produce turbulence independently of rotation. (Doc. # 20-1 at 5.) So, unlike *American Axle*'s contested claim, practicing either of these claims requires more than the mere application of "rotation" as a natural law.

Nor does *Interval Licensing* support Flowco's position. In *Interval Licensing*, the asserted claims sparsely outlined a software system meant to download advertisement data from somewhere, somehow identify the unused space of a computer display in use, and somehow depict advertisements in that space. *Interval Licensing*, 896 F.3d at 1339–1340. Those vague limitations referred only to the software's promised results—not the coding strings that provide the mechanisms by which the "system" would obtain advertisements, identify where they could be displayed on-screen, and manifest them in a separate window or in some other way. *Id.* at 1343. The omission proved particularly troublesome due to the inherently vague nature of software coding.[7] A plunger, on the

---

[7] The existence of multiple computer coding languages allows for different iterations of code that produce the same outcome. For example, claiming a result without limit to any particular coding language or even strings of code would allow the patentee to claim all codes in any language that produce said result.

13

other hand, can be described with less specificity because it must operate under established and predictable principles like those of fluid dynamics and gravity. Although every plunger rotates to some degree, (Doc. # 187 at 15:23–25), unlike the amorphous software claimed in *Interval Licensing*, Claims 7 and 12 limit themselves to plungers that rotate because of the fins and side holes. (Doc. # 20-1 at 6.)

      The second problem with Flowco's position: it mistakes the requirement of eligibility with that of enablement.[8] As the *American Axle* Court made clear, "section 101 serves a different function." *Am. Axle*, 967 F.3d at 1303 (citing *Mayo*, 566 U.S. at 90). The eligibility threshold requires only that the claim's language explains "how" it achieves the claim's desired outcome "at **some** level of concreteness," which is less detail than the granularity that the enablement standard demands of a claim's specification. *Id.* (emphasis added) (explaining that enablement requires an adequately detailed specification such that "a relevant skilled artisan [can] be able to . . . perform the claimed actions"). In this case, the claim language concretely identifies a specific action (rotation) and limits itself to two physical structures (fins and the side-hole-bore combination) that generates turbulence. *Compare* (Doc. # 158 at 7 (citing *Am. Axle*, 967 F.3d at 1301) ("The challenged claims [lack] 'any physical structure or steps for achieving the claimed result.'")), *with* (Doc. 20-1 at 6 (claiming fins machined into the bottom of a plunger)), *and* (Doc. # 137 at ¶ 13 (Flowco alleging that machining "helical

---

[8] Enablement "is concerned with whether 'the specification of a patent . . . teach[es] those skilled in the art how to make and use the full scope of the claimed invention.'" *Am. Axle*, 967 F.3d at 1303 (citing *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). Enablement is a distinct statutory requirement from eligibility and requires a separate inquiry. *See* 35 U.S.C. § 112.

slots" into the bottom of a plunger is a well-understood means of causing rotation)). Granted, the claim does not expressly recite the science underlying the causal connection between these shapes and rotation, but Flowco points to no case law requiring such pedantic claim language to satisfy the eligibility threshold. To hold otherwise would effectively collapse the two distinct standards into one when they are separated by design. *See id.* at 1303.

In sum, Claims 7 and 12 are directed to generating turbulence and they both concretely identify the physical structures—the gas holes and fins—that provide the specific means of accomplishing that result. (Doc. # 187 at 25:23–26:19.) By extension, the same goes for dependent Claims 8, 13, 14, and 15 because they derive from Claims 7 and 12.

Because the Court finds that neither Claim 7 nor Claim 12 is directed to an abstract concept, the Court need not advance these claims to the second step set forth in *Alice*. Instead, the Court proceeds to its second representative analysis: the '865 patent's Claim 16.

### 2. The '865 patent: Claim 16

Claim 16 recites:

> A method of cleaning interior walls of a tubing string in a plunger lift system of an oil and gas well wherein an elongated plunger controllably travels vertically therethrough, comprising: arranging an array of fins on a lower end of said elongated plunger, wherein said fins have a sharp edge in close proximity to said walls of said tubing string; rotating said elongated plunger about a longitudinal axis thereof, as said plunger travels through said tubing string in said plunger lift system; cleaning said walls of said tubing string by said sharp edges of said fins, as said rotating plunger travels vertically therethrough; and ejecting gas through said an angled arrangement of at least one side hole from a central bore to the outside said plunger to

15

maximize turbulence of fluid surrounding said plunger as it travels in said tubing string in said oil and gas well lift system.

(Doc. # 20-1 at 6.)

This claim language describes a method of cleaning the well tubing string while simultaneously generating turbulence. *Id.* That description includes listing the "physical structure or steps" necessary to accomplish cleaning: (1) carve fins with sharpened edges into the plunger base, core the plunger by adding a bore, and drill holes through the side walls that reach the bore; (2) allow the plunger to rotate; and (3) allow the rotating plunger's fins to scrape along the tubing string. *Am. Axle*, 967 F.3d at 1295; *see generally* (Doc. # 20-1 at 6). On its face, Claim 16 focuses on the cleaning function, lists two concrete means of harnessing rotation, and promises, albeit in passing, to generate turbulence. *See* (Doc. # 20-1 at 6.) As such, the Court finds Claim 16 directed to cleaning a well tubing string.

Flowco disagrees that Claim 16 is directed to cleaning, but it reaches this conclusion only after impermissibly dissecting the claim limitations using citations to prior art. *E.g.*, (Doc. # 125 at 16–17). Again, however, "novelty does not matter in the [Section] 101 analysis" because "novelty . . . is the [Section] 102 analysis . . . [which is] a separate basis for invalidity." (Doc. # 187 at 48:21, 20:23–24); *cf. ChargePoint*, 920 F.3d at 765. Moreover, the claim language belies Flowco's reading of Claim 16. For example, the first phrase of the claim language, "A method of cleaning interior walls …", departs from the preambles in every other claim of the '865 patent, which provide "A method of controlling fluid flow . . . .").

16

Nor does Claim 16 rely on impermissibly vague claim language. Indeed, it specifies that the fins are sharpened and rotated so that they scrape along the well tubing string. The specification explains that rotation occurs through either the fins or the side holes, both of which are express limitations of Claim 16. This claim language lends no support to Flowco's complaints of "unspecified, unqualified rotation" and failure to "specif[y] what constitutes sharp." (Doc. # 125 at 16, 18.)

In sum, Claim 16 "recite[s] a practical way of applying an underlying idea" such that it is not drafted in an impermissibly "result-oriented way." *Interval Licensing*, 896 F.3d at 1343. This claim need not proceed to *Alice*'s second step.

### 3.  The '728 patent: Claims 11, 12, 13, 14, & 15

Turning finally to Claim 11, it recites:

> A method of controlling fluid flow in a tubing string in a plunger lift system of an oil and gas well wherein an elongated plunger controllably travels vertically therethrough, comprising: arranging an array of turbulence generating side holes through a side wall of said elongated plunger, and rotating said elongated plunger about a longitudinal axis thereof, as said plunger travels through said tubing string in said plunger lift system.

(Doc. # 20-2 at 6.) Here too, the Court agrees with Flowco that these claims are "identical to their counterparts in the '865 patent." (Doc. # 125 at 22.) Because they are functionally identical, the Court need not duplicate its analysis. For the aforementioned reasons regarding the '865 patent, Claim 11 is not directed to an abstract idea for the same reasons explained regarding the '865 patent. This finding extends to dependent Claims 12 through 15.

**B.  *Alice* Step Two**

Because Flowco cannot show that any of the claims it challenges under *Alice* are directed to abstract ideas, Flowco has not rebutted the presumption of validity enjoyed by the '865 patent and '728 patent. *Baxata Inc. v. Genetech, Inc.*, 81 F.4th 1362, 1365 (Fed. Cir. 2023). Thus, the Court has no reason to consider step two.

## V.  **CONCLUSION**

For the foregoing reasons, it is ORDERED that Defendant's Partial Motion to Dismiss (Doc. # 125) is DENIED.

DATED: December 14, 2023

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge