**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-02145-CMA-KLM

WELL MASTER CORPORATION,

     Plaintiff,

v.

FLOWCO PRODUCTION SOLUTIONS, LLC,

     Defendant.

---

**ORDER ON PATENT CONTENTIONS
AND MOTION TO DISMISS COUNTERCLAIMS**

---

This matter is before the Court on five pending motions:[1]

1. Defendant Flowco Production Solutions, LLC's Renewed Motion to Compel Supplemental Infringement Contentions (Doc. # 131) is DENIED;

2. Plaintiff Well Master's Motion to Exclude Defendant's Initial and Supplemental Invalidity Contentions (Doc. # 127) IS GRANTED IN PART AND DENIED IN PART;

3. Plaintiff Well Master's Motion to Exclude Defendant's Second Supplemental Invalidity Contentions (Doc. # 195) is GRANTED;

4. Plaintiff Well Master's Motion to Dismiss Defendant's Counterclaims for Declaratory Judgment of Invalidity and Inequitable Conduct (Doc. # 146) is

---

[1] Plaintiff Well Master also filed Notices of Supplemental Authorities with respect to two of the pending motions addressed in this Order. (Docs. ## 169–70.) Defendant Flowco Production Solutions, LLC moved to strike those notices (Doc. # 174), but the Court had no need to consider those authorities in ruling on the pending motions.

GRANTED IN PART AND DENIED IN PART; and

5.  The parties' Unopposed Motion for Hearing (Doc. # 225) is DENIED.

## I.  **BACKGROUND**

### A.  **FACTS**

Well Master owns three patents for plunger lift systems:[2] United States Patent Numbers 7,395,865 ("the '865 patent"); 7,793,728 ("the '728 patent");[3] and 8,627,892 ("the '892 patent"). Well Master alleges that Flowco designed its devices "specifically to compete with Well Master's patented plunger designs" by copying those designs' patented functions and features. (Doc. # 20 at ¶ 29.) Well Master commenced this infringement action on August 9, 2021. (Doc. # 1.)

### B.  **MOTIONS AT ISSUE**

The District of Colorado's Local Patent Rules set forth a system that runs parallel to the Federal Rules of Civil Procedure's discovery protocols. Relevant here, the Local Patent Rules require that the parties notify each other of their respective theories on infringement and invalidity through the service of patent contentions. Said patent contentions form the crux of three of these four pending motions.

The parties' deadlines to serve their initial patent contentions were February 7,

---

[2] "Plunger lift systems" are used in oil and gas production. A plunger is a cylindrical device placed in the interior chamber of an oil-and-gas well. A plunger allows for the cultivation of otherwise unreachable natural gas while simultaneously ejecting wastewater suspended in the well tubing. The plunger works by sliding to the well's bottom and sealing the well, which builds pressure below the plunger. That pressure eventually lifts the plunger along with oil, wastewater, and the natural gas below. These substances get separated and, once they reach the surface, harvested. *See* (Doc. # 192 at 1–2.)

[3] The '728 patent is derivative of the '865 patent, so they share a specification.

2022, for Well Master's infringement contentions and April 22, 2022, for Flowco's invalidity contentions. (Doc. # 32 at 1–2); *see* (Docs. ## 36, 43 (extending deadlines)); *accord* D.C.COLO.LPtR 4, 5, 8. Both parties served their contentions on time. (Doc. # 127 at 2.) Neither party, however, was satisfied based on their respective readings of the Local Patent Rules. Flowco filed a motion to compel supplemental infringement contentions in April 2022, insisting that Well Master be ordered to add more detail to its theories of infringement. (Doc. # 44 at 3.) Similarly, Well Master filed a Motion to Strike Defendant's Initial Invalidity Contentions, insisting that they were impermissibly vague.[4] (Doc. # 73.)

As the parties fought over the patent contentions, Flowco was simultaneously preparing petitions for Inter Partes review before the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office ("USPTO"). (Doc. # 83.) Flowco eventually filed those applications and consequently, on September 12, 2022, the Court entered a stay in this case and denied without prejudice the parties' pending patent contention motions (Docs. ## 98, 114.). The stay was to remain in effect until the PTAB decided whether to institute Inter Partes review. (Doc. # 98.)

Ten days later—an event key to one of Well Master's pending motions to exclude—Flowco attempted to amend its patent contentions by serving supplemental invalidity contentions. (Doc. # 127-7.)[5] However, Flowco did not formally move for leave

---

[4] Well Master filed two motions to exclude, but the first motion, which raised different arguments, was summarily denied for reasons not germane to this order. *See* (Doc. # 60.)

[5] Well Master did the same with its initial infringement contentions. (Doc. # 131 at 2 (asserting supplemented contentions were served approximately five weeks after Flowco received the initial contentions).)

to amend. Well Master rejected the supplemental invalidity contentions on the basis that the amendment was motivated by bad faith[6] rather than good cause.

Nine months later, however, the PTAB declined to initiate Inter Partes review and, on June 7, 2023, the stay in this case was lifted. *See generally* (Doc. # 124.) Consequently, Flowco refiled its Partial Motion to Dismiss (Doc. # 125), which the Court denied on December 14, 2023. (Doc. # 192.) Flowco also filed an answer to Well Master's complaint, asserting counterclaims of non-infringement, invalidity, and inequitable conduct. (Doc. # 126.)

Both parties also refiled their patent contention motions. On June 7, 2023, Well Master filed its first Motion to Exclude both Flowco's initial invalidity contentions and Flowco's September 2022 attempt at supplementation. (Doc. # 127.) That same day, Flowco renewed its Motion to Compel Supplemental Infringement Contentions. (Doc. # 131.) Further, in response to Flowco's new counterclaims, on August 10, 2023, Well Master filed a Motion to Dismiss several of those counterclaims. (Doc. # 146.) When Flowco attempted again to supplement its initial invalidity contentions on October 13, 2023, Well Master filed a second Motion to Exclude. (Doc. # 195 at 12.)[7] Finally, on March 19, 2024, the parties filed an Unopposed Request for Oral Argument on Plaintiff's

---

[6] Well Master insists that Flowco, in an attempt to maintain the element of surprise¸ purposefully omitted key details from its initial invalidity contentions because those details were salient to Flowco's arguments in favor of initiating Inter Partes review. (Doc. # 127 at 6–7.)

[7] The Court originally referred the patent contention motions to United States Magistrate Judge Katherine A. Starnella pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72. (Docs. ## 129, 132, 202); *see also* (Doc. # 145). However, this Court withdrew those referrals  because this Court's resolution of Well Master's pending Motion to Dismiss turns in part on the resolution of the patent contention motions.

Motions to Exclude (Doc. # 225).

## II.     <u>MOTIONS TO EXCLUDE</u>

### A.  APPLICABLE LAW

The District of Colorado, like many other jurisdictions, has adopted Local Patent Rules that require parties to disclose certain aspects of their infringement and invalidity theories early in the case. *See generally XY, LLC v. Trans Ova Genetics, LC*, No. 17-cv-00944, 2018 WL 6791102, at *4 (D. Colo. Oct. 2, 2018) (likening patent contentions to initial disclosures in discovery); *Fox Factory, Inc. v. SRAM, Ltd. Liab. Co.*, No. 18-cv-00127, 2018 WL 6603960, at *3 (D. Colo. Oct. 16, 2018) (explaining the normative aims of Colorado's Local Patent Rules). "[I]nfringement and invalidity contentions . . . force each side to show its cards: the patent holder shows in detail how the accused device meets each claim limitation[,] and the accused infringer shows in detail how the claim is invalid." *Lear Corp. v. NHK Seating of Am. Inc.*, No. 2:13-cv-12937, 2020 WL 1815876, at *2 (E.D. Mich. April 10, 2020). Both types of patent contention disclosures involve the same "matching game." *Id.* That "game" requires producing claims charts that trace figurative lines between either the Accused Instrumentality (for infringement contentions) or prior art (for invalidity contentions) and the limitations of the patents-in-suit's asserted claims. *Id.*

Although the Local Patent Rules governing patent contentions operate somewhat like initial disclosures under Rule 26 of the Federal Rules of Civil Procedure, the two sets of rules serve distinct purposes. Both Rule 26 initial disclosures and the Local Patent Rules' patent contention disclosures seek to equip a litigant with the information it needs

to develop and support its claim(s). However, the Local Patent Rules also force the parties to "pin down" their litigation theories, thereby "***confining discovery and trial preparation*** to information that is pertinent to th[ose] theories of the case." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) (emphasis added). Contentions are meant to "crystalize" the parties' theories of the case early in litigation so as to prevent the "shifting sands approach" to the case. *Fox Factory*, 2018 WL 6603960, at *3 (citation omitted). For that reason, the Local Patent Rules serve a secondary purpose of aiding the Court in limiting and managing discovery. *Id.* (citing *Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 295 (D. Colo. 2014).

Local Patent Rules are not, however, "a straitjacket into which litigants are locked from the moment their contentions are served." *Comcast Cable Commc'ns. Corp. v. Finisar Corp.*, No. C 06 -04206, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007). If discovery yields new and relevant information, a party can move to amend its patent contentions—but it must "proceed with diligence." *O2 Micro*, 467 F.3d at 1365-66. Although Colorado's Local Patent Rules do not directly address supplementing *non-final* patent contentions, they do require good cause to amend *final* patent contentions. Moreover, courts in this district require a showing of good cause to amend *initial* patent contentions. *See, e.g.*, *Crocs, Inc. v. Effervescent, Inc.*, No. 6-cv-00605, 2017 WL 5171332, at *8 (D. Colo. Nov. 8, 2017). Good cause in this context requires showing (1) that the movant was diligent in amending its contentions and (2) that the non-movant would suffer no prejudice from amendment. *E.g.*, *id.* at *3; *but see Trans Ova*, 2018 WL 6791102, at *6 (the touchstone of good cause is diligence). A party may move to exclude

supplemented patent contentions where good cause has not been shown and does not exist. *Crocs*, 2015 WL 5171332, at *2; *accord* D.C.COLO.LPtR 16(b)(2) (prohibiting the presentation of invalidity theories that are not properly disclosed).

## B. ANALYSIS

1. <u>Flowco's Renewed Motion to Compel Supplemental Infringement Contentions (Doc. # 131)</u>

   a. *Context*

Well Master's infringement contentions, as supplemented,[8] assert theories of direct and indirect infringement. First, the infringement contentions allege that Flowco directly infringed the asserted claims because it sells thirty-three plungers that fall into two categories, "Flowco Device 1" and "Flowco Device 2." (Doc. # 46 at 2–3.) Well Master's contentions include product "stock numbers" for each "Flowco Device" group that correspond to Flowco's plunger inventory, but the infringement contentions do not explain what characteristics these plungers share that warrant two representative groups. *Id.* (providing eleven stock numbers for the Device 1 category and twenty-two stock numbers for the Device 2 category). The infringement contentions also accuse Flowco of indirect infringement because Flowco customers buy and use the thirty-three plungers identified by stock number. *Id.* at 4. Finally, the infringement contentions assert that "each limitation of each asserted claim is either literally present in the infringing

---

[8] Well Master timely served initial infringement contentions and, shortly thereafter, supplemented them. Flowco did not object by moving to exclude the supplemental filing but, rather, moved to compel additional supplementation on April 4, 2022.

plungers or is present under the doctrine of equivalents"[9] without committing to pursuing either theory. *Id.* at 3.

Flowco objects to these infringement contentions under Local Patent Rule 4(b) for four reasons. First, Flowco argues that the infringement contentions fail to distinguish which claims are indirectly infringed and under what theory of infringement. (Doc. # 131 at 6–7.) Second, Flowco argues that Well Master cannot be allowed to oscillate between the doctrine of equivalents and literal infringement, but rather must commit to one doctrine—to the exclusion of the other. *Id.* at 7. Third, Flowco insists that the infringement contentions must disclose a theory of representativeness to explain what justifies the groupings of "Flowco Device 1" and "Flowco Device 2." *Id.* at 8. Fourth, Flowco criticizes the infringement contentions as being too vague because Well Master merely parrots the actual claim language and identifies the limitations using pictures with arrows. *Id.* at 8–13. Flowco asserts that ordering these four changes would further "the purposes of Local Rule 4." (Doc. # 149 at 2.)

In response, Well Master asserts that its infringement contentions satisfy the requirements of Local Patent Rule 4 based on the text of the rule and, to the extent Flowco disagrees, that disagreement is a trojan horse through which Flowco seeks to smuggle in the heightened requirements of the Local Patent Rules of the Northern

---

[9] Under the doctrine of the equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). This doctrine becomes particularly important if claims construction orders foreclose infringement arguments. *See, e.g.*, *Health Grades, Inc. v. MDX Med., Inc.*, 71 F. Supp. 3d 1203, 1206 (D. Colo. 2014).

District of California. (Doc. # 144 at 2 n.2.) Well Master's response also clarified which features its numbered arrows identify in the infringement contentions. *Id.* at 9–15.

    b.  *Legal Standards*

Under Local Patent Rule 4, infringement contentions must be served alongside a claims chart, and the rule dictates that said claims chart must contain certain information. The claims chart must (1) identify "each asserted claim"; (2) identify "the specific location of each limitation of the claim within each Accused Instrumentality"; (3) state whether each limitation . . . is literally present in the Accused Instrumentality or present under the doctrine of equivalents"; and (4) if multiple parties are accused of direct infringement, describe "the role" each party played in direct infringement. D.C.COLO.LPtR 4(b)(1)–(4).

    c.  *Discussion*

None of Flowco's objections find support in the text of Local Patent Rule 4(b). For instance, Local Patent Rule 4(b)(2) requires a claims chart for each Accused Instrumentality and, when there are multiple Accused Instrumentalities, the rule requires a chart for each. However, nothing in the rule requires a party to explain how and why an Accused Instrumentality is representative of a product line that allegedly infringes the patents-in-suit's asserted claims. Nor does Local Patent Rule 4(b)(3) require a party to commit itself to either a theory of literal infringement or the doctrine of equivalents, especially at this early point in the litigation when the Court has not yet issued its claims construction order. The text of Local Patent Rule 4(b)(3) uses "or" conjunctively—not disjunctively, lest the rule would have included the word "either"—which means, at most,

the rule requires that initial infringement contentions clarify whether the possibility exists that the party might assert the doctrine of equivalents.[10] Although Local Patent Rule 4 requires that the claim chart identify the "specific location of each limitation" that enables the Accused Instrumentality to perform the claimed function, Well Master's initial infringement contentions adequately convey that information. D.C.COLO.LPtR 4(b)(2); *cf.* (Doc. # 46 at 9–24 (reciting the claimed limitation from the patents-in-suit and using arrows to identify the feature in Flowco's Devices 1 and 2 that allegedly equip it to perform the claimed limitation).) Flowco insists that the arrows are too vague, but Flowco's complaint rings hollow given the contradictory position it takes in other pending motions addressed by this order.[11]

Nor do Flowco's citations to case law salvage its position. *See, e.g.*, (Doc. # 131 at 6–8 (citing *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00360 WHA, 2018 WL 3219486 (N.D. Cal. July 2, 2018); *Geovector Corp. v. Samsung Elecs. Co. Ltd.*, No. 16-cv-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017).) For example, notwithstanding the textual

---

[10] Flowco's reading of Local Patent Rule 4(b)(3) would make it function akin to the election of remedies doctrine whereby Well Master must either embrace or disavow the doctrine of equivalents—clearly not the purpose of the rule. Although Flowco expresses concern that the infringement contentions allow Well Master to oscillate (Doc. # 149 at 4), that concern is premature considering the constraints imposed by Local Patent Rule 9, which governs final infringement contentions. *See* D.C.COLO.LPtR 9(a)(3) (suggesting that a party would have to specify whether it was proceeding under a literal infringement theory or, if foreclosed by claims construction, the doctrine of equivalents).

[11] As explained in the Court's analysis of Well Master's Motion to Dismiss Counterclaims below, Flowco argues that a Well Master product known as the "Sand Viper" is prior art because a ***mere picture*** of the exterior of the Sand Viper "***shows*** . . . ***a fishing neck***." (Doc. # 143 at 6–7 (emphasis added).) Thus, either Flowco is making unfounded assertions to this Court about the materiality of the Sand Viper or, as Well Master insists, Flowco is being deliberately obtuse. Regardless, the Court notes that this problem can be remedied by written discovery. To the extent that Flowco is genuinely confused, it can seek clarification informally through conferral or by propounding interrogatories.

differences between the Local Patent Rules of Colorado and the Northern District of California, *Uniloc* involved a plaintiff who asserted a representative theory of infringement, yet its infringement contentions could not consistently define the Accused Instrumentality under a set of local patent rules that explicitly required[12] explanation of the unifying traits underlying a representative infringement theory. *Uniloc USA, Inc.*, 2018 WL 3219486, at *11–12. By contrast, Well Master's initial infringement contentions, as supplemented, specify the products that constitute the Accused Instrumentalities without the material deviations that occurred in *Uniloc*. And *Geovector* involved a plaintiff whose infringement contentions failed to single out any specific features in the accused instrumentalities—entire Samsung smartphone product lines—which is simply not applicable to Well Master's infringement contentions. *Cf. Geovector Corp.*, 2017 WL 76950, at *1.

In sum, Well Master's Initial Invalidity Contentions, as supplemented, sufficiently disclosed its theories of infringement under Local Patent Rule 4. Flowco's demands to the contrary have no support in the text of the Local Patent Rules. The Court consequently DENIES Flowco's Renewed Motion to Compel Supplemental Infringement Contentions (Doc. # 131).

---

[12] The Northern District of California's Patent Local Rules require an explanation for representative infringement contentions. *Network Protection Scis., LLC v. Fortinet, Inc.*, No. C 12-01106, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013). The District of Colorado's Local Patent Rules require no such explanation.

2. <u>Well Master's Motion to Exclude Defendant's Initial and Supplemental Invalidity Contentions (Doc. # 127)</u>

a. *Context*

In accordance with 35 U.S.C. §§ 102, 103, Flowco's initial invalidity contentions asserted invalidity based on theories of obviousness and anticipation. (Doc. # 127-1 at 7). The invalidity contentions include two claims charts—one for Flowco's anticipation theories and one for its obviousness theories—as required by Local Patent Rules 8(b)(2) and (3). Flowco's anticipation claims chart cites twenty-three prior art references without specifically citing the figure numbers or column-and-line combinations that correspond to limitations claimed by the prior art. (Doc. # 127-1 at 11–12.) The obviousness claims chart cites prior art references down to the figure number or column/line and, using declaratory sentences, clarifies what was known in the art before the patents-in-suit were issued. (Doc. # 127-1 at 13–23.)

As mentioned previously in this Order, Flowco attempted to supplement its Initial Invalidity Contentions on September 1, 2022. (Doc. # 127-7.) The 2022 supplemented invalidity contentions incorporate by reference Flowco's arguments presented in all three of its petitions for Inter Partes review; the supplementation also added one new prior art reference. (Doc. # 143 at 10); *see generally* (Doc. # 127-7). Flowco attempts to justify its supplementation by blaming Well Master for serving less than ideal Initial Infringement Contentions and objecting to written discovery. Flowco also insists that it had good cause to supplement because it learned new information about Well Master's ***theories on infringement*** from Well Master's pre-stay claims construction joint disputed claim terms chart. (Doc. # 143 at 9); *see generally* (Doc. # 80).

12

Well Master's first Motion to Exclude objects to Flowco's initial invalidity contentions and the 2022 attempt to supplement the initial invalidity contentions. As to the initial invalidity contentions, Well Master argues that Flowco deliberately chose not to provide the level of detail required by Local Patent Rule 8(b) in order to unfairly preserve the element of surprise in its petitions for Inter Partes review. (Doc. # 127 at 6–7.) Well Master claims the following details are missing from Flowco's initial invalidity contentions: (1) the anticipation contentions fail to explain how the prior art anticipates the asserted claim, and (2) the obviousness contentions fail to specify which prior art Flowco is combining to conclude that the asserted claims are obvious. (Doc. # 127 at 2–4, 12.) Second, Well Master challenges Flowco's proffered reasons for supplementation—its showing of good cause to amend—by asserting that Well Master's infringement contentions are a red herring and the only viable explanation for Flowco's belated supplementation is gamesmanship. (Doc. # 127 at 12–13; Doc. # 152 at 4–5.)

Flowco, in response, argues that its attempt to supplement renders moot Well Master's Motion to Exclude because it cures the deficiencies that Well Master identified. (Doc. # 143 at 5.) As for its showing of good cause to supplement, Flowco continues to argue that Well Master's infringement contentions are "anemic." *Id.* at 9. Begging the question that invalidity contentions depend on infringement contentions, Flowco insists that it exhibited diligence based on its discovery efforts to obtain more information about Well Master's infringement theories. *Id.* (citing Doc. # 80, the joint disputed claims chart filed before this case's nine-month-long stay).

b.  *Legal Standards*

Local Patent Rule 8(b) governs the standards for Initial Invalidity Contentions. The rule requires that—for all invalidity contentions—the concomitant claims charts must "includ[e] the specific location in the items of prior art of each limitation of each asserted claim." D.C.COLO.LPtR 8(b). When a party asserts invalidity based on anticipation, the corresponding claims chart must identify "each item of prior art" and explain "how it anticipates the asserted claim." *Id.* at 8(b)(2). If a party pursues an obviousness theory, the claims chart must identify "each item of prior art or combination [thereof] and, separately for each item or combination of items," the chart must explain "how the item or combination of items renders the asserted claims obvious." *Id.* at 8(b)(3).

c.  *Discussion*

The Local Patent Rules are no paragon of clarity but, at the very least, they say this much: the claims charts that accompany initial invalidity contentions must cite prior art with precision. If the prior art is cited to support an anticipation theory of invalidity, the defendant must cite the prior art—including the "specific location" of each limitation—and explain "how [the prior art] anticipates the asserted claim." D.C.COLO.LPtR 8(b); (8)(b)(2). Notably, Flowco's anticipation claims chart does neither. It cites entire patents and offers no explanation as to how the prior art it cites anticipates the patents-in-suit. *See* (Doc. # 127-1 at 11–12.) Local Patent Rule 8 explicitly requires more. Flowco's only response to these shortcomings is that Well Master's motions to exclude are moot because Flowco remedied the deficiencies that

14

Well Master identified by serving supplemental contentions. Flowco then attempts to shift the focus to Well Master's infringement contentions—which, to be clear, is a textbook red herring.[13] Red herring aside, Flowco's counterarguments wholly miss the point—invalidity contentions that assert anticipation must include claims charts that cite prior art **and** explain how that prior art's specific limitations "anticipate[ ] the asserted claim." Flowco's anticipation claim chart offers no such explanation.

The obviousness claims chart, however, does not suffer the same flaw. Unlike the anticipation claims chart, the obviousness claims chart cites prior art down to figure numbers and column/line citations while also clarifying in a separate sentence what was allegedly well-known based on those prior art references. *See, e.g.*, (Doc. # 127-1 at 13 ("It is known to have a plunger with a lip, or what are called fishing lips or fishing necks, spaced above the central orifice.").) Thus, the obviousness claims chart provides exactly what Local Patent Rule 8(b)(3) demands. Nonetheless, Well Master insists that Flowco must provide more. In Well Master's view, Flowco must clarify exactly which prior art references it combined to reach the conclusion that the patents-in-suit obvious, but the text of Local Patent Rule 8(b)(3) does not demand such specificity. *See* D.C.COLO.LPtR 8(b)(3) (requiring identification of prior art, either alone or in combination, and an explanation of obviousness).

---

[13] Infringement and invalidity are two separate analytical inquiries, but even supposing the connection existed, Flowco's position is diminished by its contradictory litigation positions assumed in this case. For one particularly poignant example, the Court reiterates its earlier point that Flowco claims it could not serve invalidity contentions that comply with the Local Patent Rules because, for one, it could not understand how to identify a "fishing neck" feature on a plunger. Yet, elsewhere, Flowco inexplicably argues that Well Master's "Sand Viper" product is prior art because a **mere picture** of the Sand Viper "**shows** . . . **a fishing neck**." (Doc. # 143 at 6–7 (emphasis added).)

Well Master also objects to Flowco's attempt to supplement its invalidity contentions shortly after petitioning for Inter Partes review. Relatedly, the Court finds that Flowco has not shown sufficient diligence to support a finding of good cause. Flowco's first explanation—that its ability to produce sufficiently detailed invalidity contentions depended on Well Master acceding to Flowco's demands for more detailed infringement contentions—falls flat because its demands, as explained above, are bereft of support from the Local Patent Rules. Moreover, infringement contentions rarely have any connection to invalidity contentions. *Cf. Kroy IP Holdings, LLC v. AutoZone, Inc.*, No. 2:13-cv-888, 2014 WL 7463099, at *1–2 (E.D. Tex. Dec. 30, 2014) (recognizing that infringement contentions affect invalidity contentions only to the extent that they identify which patent claims are asserted). Flowco offers no reason to believe that, in the instant case, its invalidity contentions turn on understanding Well Master's infringement contentions beyond knowing which claims Well Master is asserting.

Flowco's second explanation is equally unavailing. Although Flowco claims it supplemented its invalidity contentions based on new information learned from Well Master's claims construction response,[14] the information in question has no bearing on invalidity—only infringement. (Doc. # 146 at 7 (citing Doc. # 80).) In order to formulate

---

[14] Flowco also claims that it discovered a new prior art reference while preparing its petitions for Inter Partes review but fails to specify when exactly that prior art was discovered nor what prevented Flowco from finding the prior art beyond its own unsuccessful research attempts. *See* (Doc. # 146 at 10.) Belated discovery alone does not make "new" information a valid excuse to supplement contentions; if it did, patent contention deadlines would be paper tigers. And even supposing that Flowco has some acceptable explanation for its belated discovery of this new prior art, it is unacceptable for Flowco to merely incorporate by reference every argument contained within three entire petitions for Inter Partes review. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

its invalidity contentions, Flowco merely needed to know which claims Well Master was asserting. Well Master provided that information in its initial infringement contentions, which Flowco received two months before its invalidity contentions deadline. (Doc. # 152 at 5); *see* (Doc. # 46).

In sum, Flowco offers no explanation for why it was able to provide a claims chart that satisfied 8(b)(3) but could not produce a claims chart that satisfied Local Patent Rule 8(b)(2). Nor does Flowco have an actual explanation for why it took six months to supplement its contentions—except perhaps, as Well Master speculates, strategic maneuvering. (Doc. # 127 at 6–7.) In any event, Flowco failed to provide a valid explanation of good cause as required by the Local Patent Rules. Because Flowco has not shown diligence, this Court need not proceed to the second step of the analysis which involves consideration of the degree of prejudice that amendment would cause Well Master. *See Trans Ova*, 2018 WL 6791102, at *6; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Consequently, the Court GRANTS IN PART AND DENIES IN PART Well Master's first motion to exclude (Doc. # 127) as follows: it is GRANTED as to Flowco's anticipation theories and 2022 attempt to supplement its Initial Invalidity Contentions; it is DENIED as to Flowco's obviousness contentions.[15]

---

[15] To be clear, the following invalidity contentions based on anticipation are excluded: (1) those pertaining to Claims 9 and 13 of the '892 patent; (2) those pertaining to claims 7, 8, 10, 11, and 13–16 of the '865 patent; and (3) claims 4–6 and 12–14 of the '728 patent. If Flowco wishes to make a third attempt to supplement its surviving invalidity contentions, it must first move for leave from this Court and show good cause.

3. Well Master's Second Motion to Exclude (Doc. #195)

a. *Context*

Flowco attempted to supplement its invalidity contentions a second time on October 15, 2023—four months after the PTAB declined to institute Inter Partes review. (Doc. # 195-34; Docs. ## 195-1 to 33 (claims charts)). The supplemental invalidity contentions reasserted, in a different format, the same information from Flowco's 2022 attempted supplementation (Doc. # 201 at 7) and added a new (alleged) prior art reference, a press release advertising Well Master's "Sand Viper" plunger. According to Flowco, the Sand Viper plunger model is salient to Flowco's invalidity contentions and inequitable conduct counterclaims but was discovered only during its attempt to initiate Inter Partes review. *E.g.*, (Doc. # 156 at 18–20.) Notably, Flowco denied any need to show good cause for supplementation, claiming instead that amendment was appropriate because "it would be quicker, promoted judicial efficiency, and be less expensive (to both parties) to supplement [rather] than continue another round of time-consuming motion practice." (Doc. # 201 at 5–6.) Flowco also attempted to justify its belated supplementation by pointing to three new sources of information in addition to the Sand Viper press release. (Doc. # 195-35 at 1–2.)

b. *Discussion*

In its Opposition to Plaintiff's Motion to Exclude Defendant's Second Supplemental Invalidity Contentions, Flowco argues that good cause exists because it needed clarification of Well Master's theories of infringement before it could formulate its invalidity contentions. For the same reasons provided in Section II.B.2.c above,

Flowco has not shown good cause to support its supplement. Flowco's arguments to the contrary exemplify why the Local Patent Rules emphasize the need to guard against the "shifting sands approach to litigation" that Flowco is pursuing here.[16] *Fox Factory*, 2018 WL 6603960, at *3; *cf.* (Doc. # 201 at 7). Flowco attempts to explain its delay by pointing to its belated discovery of the press release advertising Well Master's "Sand Viper" plunger. However, Flowco offers no explanation for why supplemental infringement contentions were not served until October 2023—***six months*** after the PTAB denied Flowco's requests for rehearing on the denials of its petitions to institute Inter Partes review. *See* (Doc. # 118); *cf. O2 Micro*, 467 F.3d at 1367 (noting that although litigants need ***some*** time to develop a theory after learning new information, the party moving to supplement "failed to establish that it required ***three months*** to do so" (emphasis added)).

In sum, Flowco offers no acceptable explanation as to why its invalidity arguments could not have been disclosed by April 22, 2022, as required. Consequently, this Court GRANTS Well Master's Motion to Exclude Defendant's Second Supplemental Invalidity Contentions (Doc. # 195).

---

[16] Moreover, even presuming that Well Master's claims constructions or infringement theories have a material impact on Flowco's invalidity contentions, Flowco offers no explanation as to why—despite being well-versed in the art—Flowco and its expert(s) needed that information. Flowco "points to no specific disputed facts that [this information] was required to resolve before it could identify and advance [its] arguments" nor a "substantive explanation as to why these [invalidity] arguments could not have been identified by the time of the Initial Invalidity Contentions." *Trans Ova*, 2018 WL 6791102, at *6.

### III.   PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS FOR DECLARATORY JUDGMENT OF INVALIDITY AND INEQUITABLE CONDUCT (Doc. # 146)

## A.  APPLICABLE LAW

Under Rule 12(b)(6), a defendant may move to dismiss any cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This tool can be used against any pleading made under Rule 8(a)—including counterclaims. *See* Fed. R. Civ. P. 8(a).

When deciding a Rule 12(b)(6) motion, "the court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the [claim] alone is legally sufficient." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation omitted). A legally sufficient claim must contain factual allegations that, "if accepted as true, [would] 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in turn, requires pleaded facts that support a "reasonable inference that the [counter-]defendant is liable for the misconduct alleged." *Id.* A party's factual allegations, when examined under the Rule 12(b)(6) standard, are presumed true and construed "in the light most favorable" to the non-movant. *E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). However, not all factual allegations receive this presumption. A court will not presume as true any conclusory allegations unsupported by facts or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

Tenth Circuit law requires that claims be pleaded in some sort of coherent

20

organizational structure. A pleading does not satisfy *Twombly* and *Iqbal* merely because it incorporates other ostensibly well-pleaded allegations in shotgun fashion. Forcing a party to "carefully comb through [pleadings] to ascertain which . . . pertinent allegations to which a response is warranted" can fall below federal pleading standards depending on the egregiousness of the incorporation by reference, which is itself typically a question of the volume of material incorporated. *See Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1078 (10th Cir. 2021) (internal quotation omitted). Such "shotgun" pleadings contravene the clear directives of *Twombly*, *Iqbal*, and its progeny. *See Richeson v. United States*, 849 F. App'x 726, 728 (10th Cir. 2021); *see also Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989).

Moreover, additional Rule 12(b)(6) requirements exist in the patent context. For example, the presumption of truth extends only to well-pleaded factual allegations of activities that are well-understood, routine, or conventional. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Patent jurisprudence also dictates what must be pleaded with specificity for counterclaims of anticipation, obviousness, enablement, or inequitable conduct in order to survive a Rule 12(b)(6) challenge. An anticipation counterclaim must allege that prior art discloses every claim limitation of the claims asserted by the patent-in-suit. *E.g.*, *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1336–37 (Fed. Cir. 2010). An obviousness counterclaim must allege that any differences between the subject matter of the patent-in-suit and prior art would have been obvious to a POSITA at the time of invention. *E.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). It must also

allege that a POSITA would have been motivated to combine the prior art references to produce the invention with a reasonable expectation of success. *E.g.*, *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). An enablement counterclaim must allege that the specification of the patent-in-suit does not adequately teach a POSITA "how to make and use the full scope of the claimed invention without 'undue experimentation.'" *E.g.*, *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (internal citation omitted).

Additional requirements exist to adequately state a counterclaim for inequitable conduct. Such a counterclaim requires allegations that the patent owner misrepresented or omitted material information during patent prosecution with the specific intent to deceive the PTO. The information is material when, but for the failure to disclose it, at least one claim of the patent-in-suit would not have issued. *E.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Inequitable conduct counterclaims, in particular, must allege the "circumstances constituting fraud or mistake . . . with particularity." Fed. R. Civ. P. 9(b). Although mental state can be averred generally, the allegations must include "sufficient underlying facts from which a court may reasonably infer" fraudulent intent. *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1312, 1326–27 (Fed. Cir. 2003) ("A pleading that simply avers the substantive elements of inequitable conduct without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b).").

**B.  ANALYSIS**

Flowco's second, fourth, and sixth counterclaims respectively assert that the '892, '865, and '728 patents are invalid. (Doc. # 137 at 23–25.) Each of these counterclaims contains only three allegations: (1) an allegation incorporating all previously stated allegations; (2) an allegation declaring the patents are invalid under 35 U.S.C. §§ 101, 102, 103, or 112 along with the defenses in 282(b) "and/or one or more of the judicially created requirements for patentability"; and (3) an allegation asserting that Flowco is entitled to declaratory relief. E.g., id. at 25. The reincorporated-by-reference allegations themselves include allegations that incorporate by reference Flowco's initial and supplemental Invalidity contentions in their entirety, Flowco's entire claims construction briefing, and "all discussion of prior art and its application in its three petitions for Inter Partes review before the [PTAB]." *Id.* at 15.

Flowco's seventh and eighth counterclaims allege that the '865 and '728 patents are unenforceable due to Well Master's inequitable conduct during patent prosecution. *Id.* at 25–26. Both counterclaims contend that, Well Master's representatives and attorneys "intentionally failed to disclose material prior art" to the PTO "with an intent to deceive." *Id.* This alleged prior art, as explained previously, is a Well Master press release advertising a "new Sand Viper Plunger" product issued on March 14, 2005. (Doc. # 137-1 at 8–9.) The release asserts that at least one customer owned and used the Sand Viper as of approximately December 2004. For support, these counterclaims incorporate all previous allegations by reference, which includes allegations that describe the Sand Viper's features in detail and compare them to the limitations claimed

23

by the patents-in-suit. *Id.* at 17–23, 25–26. The counterclaims also incorporate by reference allegations that Well Master's attorneys and representatives knew that this prior art was material based on specific testimony from Well Master's retained expert before the PTAB. *E.g., id.* at 21.

Well Master asserts two challenges to Flowco's counterclaims. As to Counterclaims 2, 4, and 6, Well Master argues that the only allegations that could be considered well-pleaded under current federal pleading standards are those incorporating Flowco's initial invalidity contentions, attempted supplementation thereof, and its Inter Partes review petitions—all of which Well Master maintains are improper for the reasons stated in its first Motion to Exclude. (Doc. # 146 at 1–4.) Well Master also notes that nowhere in these counterclaims does Flowco allege that a person of relevant skill in the art ("POSITA") would have been motivated to combine the prior art references to produce the inventions claimed by the patents-in-suit with a reasonable expectation of success—a prerequisite to claiming invalidity as Flowco does here. *Id.* As for Counterclaims 7 and 8, Well Master argues that Flowco's allegations fail to adequately allege but-for materiality and challenges the notion that the Sand Viper press release is validly considered prior art capable of supporting Flowco's inequitable conduct claim. *Id.* at 8–14.[17]

---

[17] Well Master repeatedly asserts that Flowco's reliance on the Sand Viper press release is a deliberate attempt to fabricate evidence and present such falsity to this Court. (Doc. # 146 at 10; Doc. # 160 at 7–10.) The Court takes no position on that matter at this time due to Well Master's pending motions for Rule 11 sanctions. (Doc. # 191.) However, the Court, in the strongest possible terms, encourages both parties to *limit their briefings to the merits of the legal issues*. Moreover, unless well supported by the record, making serious accusations against the opposing party or counsel only leads the Court to question the legal arguments of the party pointing the proverbial finger.

In response, Flowco argues that the Motion to Dismiss should be denied because it is six days late. (Doc. # 156 at 2–7.) If the merits are even considered, Flowco asserts that Counterclaims 2, 4, and 6 meet the Rule 12(b)(6) threshold because the pleadings incorporate by reference Flowco's invalidity contentions and Inter Partes review petitions. *Id.* at 10–11. Regarding Counterclaims 7 and 8, Flowco argues that the Sand Viper is valid prior art and that the counterclaims sufficiently allege but-for materiality because, as Well Master's own expert testified, the Sand Viper practices the '865 and '728 patents. *Id.* at 14–20 (citing 37 C.F.R. § 1.56(b).)

The Court begins with Counterclaims 2, 4, and 6. These counterclaims allege invalidity exclusively through incorporation by reference. The incorporated material consists of other allegations within Flowco's answer and 211 pages of Inter Partes review petitions. Although the Federal Rules of Civil Procedure contemplate incorporation by reference in pleadings, "adoption by reference must be sufficiently direct and explicit for an opposing party to have fair notice of the claims against them." The Court finds it patently unreasonable to force Well Master—or the Court, for that matter—to comb through 211 pages of administrative records in search of the well-pleaded factual allegations that Flowco bears the burden of presenting. *Ortiz*, 550 F. Supp. 3d at 1078; *accord* Fed. R. Civ. P. 10(c) (governing incorporation by reference). Consequently, this Court GRANTS Well Master's Motion to Dismiss Counterclaims insofar as it applies to Counterclaims 2, 4, and 6. Because Flowco can ostensibly address these deficiencies in an amended answer, Counterclaims 2, 4, and 6 are DISMISSED WITHOUT PREJUDICE.

As for Counterclaims 7 and 8, the Court finds that the Sand Viper's materiality is an issue that is not appropriately resolved on a Rule 12(b)(6) motion. Under 35 U.S.C. § 102(b), which the parties invoke, an inventor that publicly discloses her invention cannot later apply for a patent claiming "the subject matter so disclosed [ ]or subject matter obvious therefrom" unless the inventor applies for said patent within one year of the public disclosure. *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982). Flowco alleges that the Sand Viper press release is prior art because it was issued more than one year before Well Master applied for what became the '865 and '728 patents. (Doc. # 137 at 17.) Well Master counters that the patents-in-suit claim a priority date early enough to bring the Sand Viper press release within Section 102's one-year safe harbor provision based on an earlier, abandoned patent application known as the '914 Application. In response Flowco argues that this exception does not apply because the '865 and '728 patents disclose materially different subject matter from the '914 Application. (Doc. # 137 at 17.) Those allegations are entitled to a presumption of truth, and this Court cannot disregard properly pleaded factual allegations irrespective of whether, as Well Master insists in its pending motion for Rule 11 sanctions (Doc. # 191), those facts are unlikely to be true. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1358 (Fed. Cir. 2007). Consequently, this Court finds that—at least for purposes of Rule 12(b)(6)—Flowco adequately states a counterclaim for inequitable conduct. Therefore, with respect to Counterclaims 7 and 8, the Court DENIES Well Master's Motion to Dismiss Defendant's Counterclaims for Declaratory Judgment of Invalidity and Inequitable Conduct (Doc. # 146).

### IV.   CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- Defendant's Motion to Compel (Doc. # 131) is DENIED.

- Plaintiff's first Motion to Exclude (Doc. # 127) is GRANTED IN PART AND DENIED IN PART as detailed above.

- Plaintiff's second Motion to Exclude (Doc. # 195) is GRANTED.

- Plaintiff's Motion to Dismiss (Doc. # 146) is GRANTED IN PART AND DENIED IN PART.

  o   GRANTED with respect to Defendant's 2nd, 4th, and 6th Counterclaims. These Counterclaims are DISMISSED WITHOUT PREJUDICE.

  o   DENIED in all other respects.

- The parties' Unopposed Motion for Hearing (Doc. # 225) is DENIED.

- FURTHER ORDERED that, should Defendant wish to file an Amended Answer addressing the deficiencies identified in this order, said Amended Answer shall be filed no later than April 21, 2024.

- FURTHER ORDERED that, should Defendant wish to formally move to supplement its invalidity contentions, said motion shall be filed no later than April 21, 2024.

DATED: March 26, 2024                          BY THE COURT:


_____
CHRISTINE M. ARGUELLO
Senior United States District Judge

27